DENNIS LEARY, ADMINISTRATOR, &c., PLAINTIFF-RE-
SPONDENT, v. WEST JERSEY AND SEASHORE RAIL-
ROAD COMPANY, DEFENDANT-APPELLANT.

MUNJEG K. BOYAJIAN ET AL., PLAINTIFFS-RESPONDENTS,
v. WEST JERSEY AND SEASHORE RAILROAD COM-
PANY, DEFENDANT-APPELLANT.

Argued June 7, 1923—Decided November 7, 1923.

Negligence—Motor Vehicle Collision at Grade Crossing—Con-
flict of Testimony—Admission of Evidence Relating to Pur-
pose, Earnings and Character of Injured Considered.

On rules to show cause.

Before Justices KALISCH and KATZENBACH.

For the rule, *Bourgeois & Coulomb*.

For the respondents, *Cole & Cole*.

*Contra, Clarence L. Cole*.

PER CURIAM.

The above cases arose out of the same accident and were
tried together at the Atlantic Circuit. In both cases ver-
dicts were rendered for the plaintiffs. Rules to show cause
were allowed in both cases at the instance of the defendant.
Under these rules the cases are before us.

On October 30th, 1921, a party of young people, six in
number, were riding in a Ford automobile. The highway
upon which the car was being operated crossed the tracks
of the West Jersey and Seashore Railroad Company at a
crossing known as the New Road crossing in Pleasantville,
in Atlantic county. At this crossing the automobile of the
plaintiff was struck by an electric train of the defendant

which had left Atlantic City at eleven P. M. for Camden. The accident happened about eleven-fifteen P. M. Lester Eaton was driving the car. To his right sat Ethel Duncan. George Boyajian, Paul Leary, Betty Smallwood and Edith. Wagner occupied the rear of the automobile. There was an electric bell at the crossing. Beyond the crossing in the middle of New Road an electric street light was suspended. A good view of the tracks towards Atlantic City could be obtained from the side of the railroad upon which the automobile was as it was approaching the crossing. It was necessary for the automobile to ascend a grade to reach the track. Paul Leary was killed. On of the suits is by his administrator to recover damages for his death. George Boyajian, an infant, was injured. He has, through his father, sued to recover for his injuries. His father also sued for the losses which he had sustained through the accident. George Boyajian obtained a verdict of $1,000. His father obtained a verdict of $1,500. The administrator of Leary obtained a verdict of $7,500.

The defendant asks that these verdicts be set aside because they are contrary to the weight of the evidence. The evidence was conflicting. There was evidence that the crossing bell was ringing. There was evidence that it was not ringing. There was evidence that the whistle and bell upon the train were blown and rung as the train approached the crossing, as required by the statute. There was evidence that the whistle was not blown and the bell was not rung, as required by the statute. If the jury had found in favor of the defendant we would not have disturbed the verdicts. We are, however, of the opinion that the evidence is not preponderating in favor of the defendant that we are warranted in setting aside the verdicts. If a verdict is set aside as being against the weight of the evidence, it must be so clearly against the weight of the evidence as to give rise to the inference that some other motive than a calm and deliberate consideration of the evidence has influenced the jury in arriving at the verdict.

In the Leary case there was admitted evidence which we think improper, and which, without doubt, resulted in larger verdict than if the evidence had been excluded. Mrs. Leary, the mother of Paul Leary, the deceased, was permitted to testify what the deceased had told her he intended to do with his earnings after he had become of age. Over objection Mrs. Leary testified: "He asked us to start and build a home, and he gave me his oath that never would he leave his home while there was a dollar owing on that home."

The deceased was eighteen years and six months of age when he met his death. He was attending the high school and during vacations carried on the trade of a painter. His wages were $35 per week. After deductions for clothes and spending money the balance was turned over to his mother. His parents had commenced the building of a home, and it was with reference to this that Mrs. Leary was permitted to testify as she did. It is, of course, permissible for a parent to testify what the qualities of a deceased child were, whether industrious, generous, strong, healthy, &c. These qualities would be known (perhaps not to the degree which a parent would know them) by members of the community in which the deceased lived. If the parent testified untruthfully the evidence given could be refuted by others who knew the deceased. This evidence speaks of past transactions and incidents. Where a statement is permitted to be given as to what the deceased said as to his future conduct or attitude it is in a sense hearsay, and is the mere expression of an opinion as to what the declarant proposed to do in the future. The deceased was under no legal obligation and could make no contract by which his earnings would go towards the payment of the home. Many things could happen, as illness or marriage, which would make it impossible for the good intention which the deceased probably had to be carried out. We think that the verdict is high when only the pecuniary loss can be considered, and that the evidence referred to was a producing cause of its size. It will be reduced to $5,000, and if this reduction be consented to within ten days from the filing of this opinion by the plaintiff, the rule will be dis-

charged, otherwise it will be made absolute. In the Boya-
jian case the rule is discharged.

We have examined the other questions raised and briefed
by the defendant, but see in them nothing which prompts us
to make other dispositions of the cases than that above made.